76 N.J. Super. 115 (1962)
183 A.2d 801
STATE OF NEW JERSEY, PLAINTIFF,
v.
MATTHEW J. PARISI, DEFENDANT.
STATE OF NEW JERSEY, PLAINTIFF,
v.
CARL WEITERSHAUSEN, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided July 17, 1962.
*116 Mr. Maurice McKeown, Assistant Prosecutor, for plaintiff (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
Mr. Nathan H. Sisselman for defendants (Messrs. Addonizio, Sisselman, Nitti & Gordon, attorneys).
MATTHEWS, J.C.C.
Defendants move to suppress evidence seized by representatives of the Essex County Sheriff's Office as a result of a search without a warrant conducted in the place of business of each of them. The motions were heard together by consent since both involve similar practices by the law enforcement officers concerned.
Defendant Parisi conducts a newsstand located at the northeast corner of Market Street and Pennsylvania Plaza, in the City of Newark. The stand consists of the usual wooden stall and contains numerous magazines, newspapers, covered books and pamphlets such as are found in the typical city newsstand. The defendant Weitershausen conducts a bookstore at 279 Market Street in the City of Newark. Ostensibly, this defendant deals in all types of new and used books, magazines and pamphlets.
As the result of a presentment returned by the grand jurors of Essex County during the year 1959, the Sheriff *117 of Essex County assigned one of his detectives, Arthur W. Magnusson, to conduct an investigation of the various booksellers and newsdealers in Essex County who were allegedly selling lewd, lascivious and salacious materials. During the course of his assignment, Detective Magnusson investigated a number of establishments, including the newsstand of defendant Parisi and the bookstore of defendant Weitershausen. In conducting his investigation Detective Magnusson made purchases of various publications from both of the defendants. His procedure was to observe the type of publications exposed for view and sale, and to make test purchases of copies of magazines and booklets which seemed to him to be of the type criticized in the presentment to the grand jurors. He would then take his purchases home, read them and judge their content as a whole, as he stated, "under the standard as laid down in the Roth case." The period of investigation consumed approximately three months. Detective Magnusson testified that while he was conducting his investigation he received numerous complaints from individuals, some anonymous, and from some religious organizations, concerning the type of materials that were available on the newsstands and in the bookstores, including those of these two defendants.
After completing his investigation Detective Magnusson made up a list of various materials which he judged, in his opinion, to be obscene, and thereupon arranged to have raiding parties of detectives go to the business establishments of these defendants for the purpose of searching for such materials and seizing them. Armed with copies of the list, two teams of detectives came to the newsstand of Parisi and the bookshop of Weitershausen on October 7, 1959, and thereupon seized the various materials which they found at those locations. The present indictments followed these raids.
It is conceded that no warrants were issued to the detectives authorizing the searches and seizures which they effected. The State contends, however, that since the publications *118 in question were exhibited in open view in a public place, there was justification to seize the materials without a warrant since, under such circumstances, a violation of the law was then being committed openly and in the presence of the raiding officers.
The defendants claim that a warrant, under the circumstances presented here, was absolutely necessary in order to sustain the searches that were made. They argue that the determination as to whether the publications in question were obscene, and therefore constituted an alleged violation of the law, was left to a police officer who was not subjected to judicial review for approval. Thus, it is argued, no determination of probable cause by an intervening judicial mind was made prior to the search and seizure, and that such constitutes an unreasonable search within the constitutional sense.
In the law of search and seizure it is rudimentary that a search by police officers may be conducted without a warrant only under exceptional circumstances. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). Both the Federal Constitution and the Constitution of this State guarantee that our citizens shall be free of unreasonable searches and seizures, and provide that no warrant for search shall issue except upon probable cause supported by oath or affirmation. One of the exceptional circumstances which may justify a search and seizure by officers without a warrant is the commission of a crime in the presence of the officers. Under such circumstances, a reasonable search incident to the arrest may be conducted. See Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).
Under the theory espoused by the State here, it is said that the display of the materials in question to open view, in a public place, constituted the commission of a crime, and that since the officers were present and saw the display, *119 they had reasonable ground under these circumstances to effect an arrest and to conduct a reasonable search of the premises concerned. Thus, the State argues no warrant was necessary with respect to either defendant.
The difficulty with the argument advanced by the State is that it overlooks one of the basic issues involved here. That issue involves the guarantee of the freedom of speech and expression which exists under the First and Fourteenth Amendments of the Constitution of the United States. Cf. Near v. State of Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The procedure involved here, therefore, involves two areas of constitutional liberty: freedom of speech and the right of privacy of individuals from unreasonable searches and seizures.
In Marcus v. Search Warrants of Property, etc., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), the Supreme Court of the United States had presented to it the question involving a statute and court rules of the State of Missouri which established procedures authorizing searches and seizures of obscene publications preliminary to their destruction by burning or otherwise if found by a court to be obscene. Under the Missouri procedure, a warrant for search for and seizure of obscene materials issued on a sworn complaint filed with a judge or magistrate. If the complaint stated positively and not upon information or belief, or stated evidential facts from which a judge or magistrate could determine the existence of probable cause to believe that obscene materials were then being held or kept in any place or in any building, the judge or magistrate would then issue a search warrant directing any peace officer to search the place and to bring the materials described before the judge or magistrate for ultimate determination as to their obscenity. The proceedings under the Missouri statutes and rules were ex parte.
The Supreme Court concluded that the procedures established in Missouri, as applied in the case before the court, lacked the safeguards which due process demands to assure *120 nonobscene material the constitutional protection to which it is entitled. In reaching this conclusion, the court observed that under the Fourteenth Amendment a state is not free to adopt whatever procedures it pleases in dealing with obscenity without regard to the possible consequences for constitutionally protected speech.
In Marcus a police officer had examined the various publications which were in the possession of appellant. As a result of his examination, he composed a list setting forth various publications which he determined to contravene the Missouri obscenity law. A warrant for the search for and seizure of such materials was issued by a Missouri court. The searching officers not only used the list furnished to them by the inspecting officer, but also exercised their own discretion in making ad hoc determinations as to other publications that were seized. When it was determined that a publication should be seized, all copies thereof were taken into custody. Based upon those facts, the Supreme Court determined that discretion to seize allegedly obscene materials cannot be confided to law enforcement officials without greater safeguards than were operative under the Missouri procedures.
The question as to whether any form of human expression is obscene and, therefore, not under the protection of the First Amendment, is one which requires the exercise of sensitive judgment and cautious discretion. In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), the Supreme Court of the United States determined that obscenity is not within the area of constitutional free speech or press. The court defined obscenity as material which deals with sex in a manner appealing to prurient interest and, further, "whether to the average person applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." In Roth the court very carefully pointed out that it recognized the difficulty of the test for obscenity which it had established in its opinion, and such *121 recognition was emphasized because of the vital necessity, in applying the test, of safeguarding and protecting the freedoms of speech and press of material which does not treat sex in a manner appealing to prurient interest. (354 U.S., at p. 488, 77 S.Ct. 1304)
In its subsequent opinion in Smith v. People of the State of California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), the Supreme Court again issued a warning concerning the freedoms of speech and press when dealing in the area of obscene materials, when it stated that the existence of a state's power to prevent the distribution of obscene material does not mean that there can be no constitutional barrier to any form of practical exercise of that power.
In dealing with areas of the criminal law which involve the conduct or overt behavior of individuals, the determination to be made by a law enforcement officer as to whether the crime or violation of law is being committed in his presence, or probably has been committed, is one based upon factual and practical considerations of everyday life on which reasonable and prudent men, and not legal technicians, act. The standard of proof required for the existence of probable cause for the officers to act in these cases have been stated to be correlative to what must be proved. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). When a law enforcement official seeks a warrant to search and seize articles which are contraband or connected with the commission of the crime, other than in an emergent situation, it is necessary for him to produce under oath, before a judicial officer, such facts as will give rise to a conclusion in the mind of the judicial officer that there is probable cause to believe that the items sought to be found and seized are in fact upon the premises in question. If the apparent facts given under oath are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, then there is probable cause justifying *122 the issuance of the warrant. Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032 (1925).
In the area of criminal law which embraces the obscene a situation completely different from that concerning crimes involving overt antisocial conduct exists. Even if we should accept as applicable in these cases the standard for determining the existence of probable cause, as set forth in Brinegar, supra, that it is the factual and practical considerations of everyday life on which reasonable and prudent men might act which are germane, it is at once apparent that the majority of law enforcement officers are hardly equipped to determine that material observed is probably obscene. The application of the test laid down in Roth, by the admission of the Supreme Court, is one of complexity. The person applying the test must balance his view of the content of the material under examination, judging its patent offensiveness and prurient interest appeal, Manual Enterprises, Inc. v. Day, 82 S.Ct. 1432, against the interest of society as a whole in the protection of the fundamental constitutional guarantee of freedom of expression. In its application, the test cannot be diluted in any manner by the personal dislikes or personal moral judgments of the person applying it. I do not believe that the First and Fourteenth Amendments permit the exercise of judgment ex parte by law enforcement officers when they are called upon to deal with materials allegedly obscene.
The officers involved here took it upon themselves, without prior judicial approval, to seize material which in their judgment violated the obscenity law. The only basis for the formation of this judgment was, by admission, the determination made by Detective Magnusson. I do not for one moment question the officer's good faith in this regard. In my opinion, he was called upon to perform a task which was impossible for him to perform. The issue here, however, is not the good faith of the officers involved, but rather whether sufficient protection was afforded to freedom of expression under the procedures employed.
*123 Since no warrant was obtained in these proceedings and, therefore, no judicial determination was made as to probable cause with regard to a violation of N.J.S. 2A:115-2, it is my conclusion that defendants' motions to suppress must be granted. Implicit in this conclusion is my belief that probable cause for a violation of the obscenity laws cannot be deemed to exist by a law enforcement official acting on his own behalf. The intervention of a judicial mind for the determination of probable cause in these cases is, in my opinion, an absolute necessity.
Defendants' motions to suppress are granted.