# STATE OF MARYLAND *v.* DENTEN CORPORATION and THOMAS FRANK

[No. 112, September Term, 1979.]

*Decided July 9, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Alan M. Foreman, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *John C. Themelis, Assistant State's Attorney for Baltimore City,* on the brief, for appellant.

*Burton W. Sandler* for appellees.

RODOWSKY, J., delivered the opinion of the Court.

The question presented here is the extent to which First Amendment principles developed in connection with the seizure of presumptively protected, but allegedly obscene, communications material are to be engrafted upon the seizure of such material as evidence of the alleged violation of the criminal provisions of the licensing requirements of Maryland's motion picture censorship law.

On October 18, 1978 Baltimore City police executed a search and seizure warrant at Follies Bookstore, 416 E. Baltimore Street, and seized 32 "peep show" films which

were allegedly being exhibited by the appellees "without having first secured approval thereof and a license therefor" from the Maryland State Board of Censors in violation of Maryland Code (1957, 1978 Repl. Vol.), Art. 66A, § 19 (b). Appellee, Denten Corporation ("Denten"), the owner of Follies Bookstore, and appellee, Thomas Frank, Denten's only employee on the premises at the time of the seizures, were each convicted on November 22, 1978 in the District Court of Maryland of 28 charges of violating § 19 (b) on the day the warrant was executed.[1]

On appeal to the Criminal Court of Baltimore, appellees' motions under Maryland Rule 736 to dismiss the charging documents were granted. We issued *certiorari* on the State's petition to review the constitutional and procedural issues presented. We shall reverse.

Seized at Follies Bookstore were projectors as well as film. It further appears that seizures of film and projectors were also made in October 1978 from peep show operations in Baltimore City in addition to that of Denten. On November 24, 1978 the Court of Special Appeals, in consolidated and advanced appeals from the dismissal of requests by Denten and others for injunctions, directed the Circuit Court of Baltimore City to issue forthwith permanent injunctions restraining the Commissioner of the Baltimore City Police Department and named officers of the vice squad from seizing projectors if certain conditions were satisfied. *Europo Books, Inc. v. Pomerleau,* 41 Md. App. 114, 395 A.2d 1195, *cert. denied sub nom., 400 E. Balto. St., Inc. v. Pomerleau,* 284 Md. 743 (1979). The Denten films seized on October 18, 1978 were destroyed by the police in February, 1979 prior to trial of the appeal from the District Court. It is the State's position that this destruction resulted from a good faith misunderstanding involving other parties in the *Europo Books* civil litigation who were abandoning any claim to the return of film seized from them.

---

1. Four charges, each relating to seized film cassettes which were broken, were dismissed as to each defendant in the District Court. The District Court also dismissed as to each defendant 32 additional charges. These charges related to films other than those seized which allegedly had been exhibited on October 17, 1978 when the police obtained certain information utilized in the application for the search and seizure warrant.

On July 12, 1979 each appellee filed a motion to suppress and a motion to dismiss, the latter of which included an allegation that Art. 66A, § 19 (b) was being unconstitutionally applied. These motions came on for hearing on October 15, 1979. In oral argument, appellees contended that Art. 66A, title, "Moving Pictures," is to be equated with an anti-obscenity statute, that "[y]ou can't prohibit [the material] from being distributed until a judicial determination" of obscenity, and that, where the seized material is the only copy in the possession of the owner, the State must either return the material to the owner or give the owner the opportunity to make an additional copy of it in order to prevent a restraint of distribution prior to the judicial determination. Testimony was taken, limited to the motions to dismiss,[2] from which the court below found that the 28 seized films involved in the surviving charges were in fact the sole copies in Denten's possession.[3]

Based on this finding, the charging documents were dismissed. The rationale of the Criminal Court of Baltimore, in its oral opinion, is as follows:

> And the structure we have here is that there is a charge brought against the Defendant. He is not given the opportunity to be given a copy of this film. He is not allowed to keep the film in his possession. The State has that option. The State has the option of saying we are charging you for October 18th, 1978 with showing these twenty-eight films. The charges are placed and the film is returned to the operator. And let him show it again. But, if he

---

**2.** Here the constitutional question raised by appellees with respect to the enforcement of the statute was asserted as a bar to prosecution independent of evidentiary considerations reaching guilt or innocence. Such an objection is cognizable on a motion to dismiss by the terms of Rule 736c, dealing with other than mandatory motions, which provides:

> Any other defense, objection or request capable of determination before trial without trial of the general issue shall be raised by motion filed at any time before trial.

**3.** The sufficiency of the evidence to support this fact finding is not an issue embraced in the grant of the Writ of Certiorari and is not before us.

shows it again, it's under the pain of possible prosecution for each and every time he shows it.
. . . .

There's been no testimony that the State ever offered the Defendants the opportunity to make a copy at State's expense or their own expense even. It [the film] was immediately seized and that was it. No opportunity for a copy to be made according to what we have in the record. So, the State certainly had avenues available to it to forego any continued restraint pending judicial proceedings . . . if the State were allowed to seize a film, and it's the only copy that a Defendant has, give to the Defendant no opportunity to get that film back until the adjudication is over, to give the Defendant no opportunity to make a copy of that film, then under the structure of our law just as was the case in Freedman,[4] we don't know how long a judicial process will take when finally the Defendants might be vindicated.

Before addressing this holding, it is helpful to delineate what is *not* before us. There was no ruling on the motion to suppress and, for purposes of this appeal only, we shall assume that the warrant was validly issued and executed. Further, no issue is presented that the appellees were prejudiced in the defense of the charges as a result of the destruction by the police of the seized film. It is the position of the State that it can present a case in chief without introducing the film. Any contention that the appellees may have that the proof on which the State anticipates relying is derivative of the film and should be excluded, either because of illegal seizure or because of the destruction, whether deliberate or inadvertent, is not before us. There is also a dispute between the parties as to whether the appellees ever made any request for a return, or a copy, of the seized film.[5]

---

**4.** Freedman v. Maryland, 380 U.S. 51, 85 S. Ct. 734, 13 L. Ed. 2d 649 (1965).

**5.** The record before us does not reflect any request by the appellees other than the extent to which the general allegations of the motion to dismiss, as amplified by oral argument, can be considered as a request made at a

However, because of the posture in which this case comes to us, we view that dispute as immaterial.

In essence the court below held there to be a constitutional obligation on the State to maintain a procedure for the copying or return of the sole copy of an allegedly unlicensed film seized as evidence of crime and that the sanction for failure to fulfill that obligation is dismissal of the charges. If the procedure envisioned by the trial court required the State to initiate the mechanism, the State did not do so. If the owner must request the film or a copy and has a right of constitutional dimension to it, that right would not be defeated by even an accidental destruction of the film. Thus, Denten's motion to dismiss raises the issues of whether there is such a right and, if so, whether dismissal of the charging document is the sanction for its violation.

The trial court reached its conclusion with heavy reliance on *Freedman v. Maryland,* 380 U.S. 51, 85 S. Ct. 734, 13 L. Ed. 2d 649 (1965). In *Freedman* a conviction under Maryland Code (1957), Art. 66A for exhibiting an unlicensed motion picture was reversed because the Maryland procedural scheme failed "to provide adequate safeguards against undue inhibition of protected expression" which rendered the "requirement of prior submission of films to the Board an invalid previous restraint." 380 U.S. at 60, 85 S. Ct. at 740, 13 L. Ed. 2d at 655. The Supreme Court held:

> Applying the settled rule of our cases, we hold that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. First, the burden of proving that the film is unprotected expression must rest on the censor . . . . Second, while the State

time when the request was incapable of fulfillment, because the film had previously been destroyed. Appellees assert that a request was made before the District Court of Maryland. Since the appeal from the District Court is *de novo,* any such request does not appear in the present record from the Criminal Court of Baltimore. Appellees also assert that a request was made in conjunction with an associated civil proceeding but there is no evidence in the record in this appeal bearing on that assertion.

> may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor's determination whether a film constitutes protected expression. The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint .... To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution .... Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect on an interim and possibly erroneous denial of a license. [*Id.* at 58-59, 85 S. Ct. at 738-39, 13 L. Ed. 2d at 654-55].

As a result of *Freedman* Art. 66A, § 19 was amended by emergency legislation, Maryland Laws (1965), Ch. 598, to provide the procedural safeguards presently found in that section. The constitutionality of the modified statute has been sustained when challenged on a number of grounds, including alleged non-compliance with the standards enunciated in *Freedman. Star v. Preller,* 352 F. Supp. 530 (D. Md. 1972), *vacated and remanded for reconsideration,* 413 U.S. 905, 93 S. Ct. 3054, 37 L. Ed. 2d 1016 (1973), *on remand,* 375 F. Supp. 1093 (D. Md.), *aff'd mem.,* 419 U.S. 956, 95 S. Ct. 217, 42 L. Ed. 2d 173 (1974); *Sanza v. Md. St. Bd. of Censors,* 245 Md. 319, 226 A.2d 317 (1967). *See also Mangum v. Md. St. Bd. of Censors,* 273 Md. 176, 328 A.2d 283 (1974).

The issue of seizure of a sole copy of a film as evidence of a violation of Maryland's censorship law has not previously been presented. However, the Supreme Court had occasion to discuss the seizure of a sole copy of a motion picture film as evidence of crime in *Heller v. New York,* 413 U.S. 483, 93 S. Ct. 2789, 37 L. Ed. 2d 745 (1973). There the police had seized a film at a commercial movie theatre acting under a warrant issued by a judge who had seen the film. The seizure was for use as evidence of the crime of obscenity with which the manager was charged.

The manager contended that no seizure could constitutionally be made of motion picture film without a prior adversary hearing. On this phase of the case the Supreme Court held as follows:

> But seizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film. If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible. In addition, on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the film must be returned.[11]

---

[11] Failure to permit copying of seized material adversely affects First Amendment interests; prompt copying of seized material should be permitted. If copying is denied, return of the seized material should be required. On the other hand,

> violations of Fourth Amendment standards would require that the seized material be excluded from evidence. [413 U.S. at 492-93, 93 S. Ct. at 2794-95, 37 L. Ed. 2d at 754-55 (citations omitted) (Footnotes 8 through 10 omitted)].

Applying the principles enunciated by the Supreme Court to the instant matter, we think it is beyond argument that the State may not seize the sole copy of a film as evidence of violation of the licensing requirements of Art. 66A and refuse to return the film or provide the opportunity for making a copy thereof, if the film is sought by the defendant for the purpose of submitting it to the Board of Motion Picture Censors for review and licensing. Otherwise, the initial, bona fide seizure would be converted into a restraint of possible subsequent lawful exhibition of the film for the duration of the criminal proceedings and violate the safeguards of accelerated procedure mandated by *Freedman*.[6]

However, we think it is equally clear that it is not the obligation of the State to initiate such a submission to the Board. As a practical matter the State is not in a position to know if a seized film is the only copy of that particular film within the possession of the alleged exhibitor. When *Freedman* recognized that "the State may require advance submission of all films ...", under a procedurally valid statute, the onus to submit a film for review is clearly placed on the one who desires to exhibit it. While the theatre manager in *Heller* never requested return or a copy of the film seized in that case and made no showing that the seizure of a copy of the film precluded its continued exhibition, the Supreme Court noted that "[i]n this case, the barrier to a prompt judicial determination of the obscenity issue in an adversary proceeding was not the State, but petitioner's decision to waive pretrial motions and reserve the obscenity issue for trial." 413 U.S. at 490-91, 93 S. Ct. at 2794, 37 L. Ed. 2d at 753. This statement is inconsistent with

---

**6.** The opportunity to make a copy from a sole copy of a seized, unlicensed film· should also be permitted if the use will be merely private and non-commercial. *See* Stanley v. Georgia, 394 U.S. 557, 89 S. Ct. 1243, 22 L. Ed. 2d 542 (1969).

the existence of an obligation on the State to initiate inquiry as to whether the one from whom the film was seized desires its return, or a copy thereof, because the seized copy is the only copy.

Also implicit in the holding by the Criminal Court of Baltimore was the concept that no procedure existed in Maryland for obtaining at least a copy of the film where the only copy has been seized. We do not agree. Maryland practice recognizes motions for the return of property seized under search warrants. For example Md. Code (1957, 1976 Repl. Vol., 1979 Cum. Supp.), Art. 27, § 551 (c) (1) provides:

> If, at any time, on application to a judge ... it is found that property rightfully taken under a search warrant is being wrongfully withheld after there is no further need for retention of the property, the judge must cause it to be restored to the person from whom it was taken.

With respect to the very narrow problem area under discussion, which assumes that the sole copy of a motion picture film has been seized, and which further assumes that the person from whom it was taken applies to have the sole copy delivered to the Board of Motion Picture Censors for review or desires to have a copy made for such a submission, we interpret Art. 27, § 551 (c) (1) to permit honoring the request. We foresee that an informal request to the state's attorney for transmittal of the film or a copy to the Board for review would be honored. However, were it not honored, we interpret the language, "there is no further need for retention of the property," to embrace the situation in which there is retention of the sole copy of a film, without permitting the making of a copy thereof. Further, a refusal which would operate to prevent submission of a copy of the film to the Board would be wrongfully withholding the property within the meaning of the statute.

Given a seizure of the sole copy of a film valid in the first instance, with the resulting necessity of arranging for copying of the seized material, the process of effecting the copying, if prompt, is not an invalid restraint. *Heller v. New*

*York, supra,* 413 U.S. at 493 n. 11, 93 S. Ct. 2795 n. 11, 37 L. Ed. 2d at 754-55 n. 11. Once a copy of the film has been submitted, the procedure would then be subject to the time limits built into Art. 66A.

In the instant matter the court below found that the right to a copy of, or return of, the sole copy of each film is basically unlimited in addition to being relatively automatic. This is clear from the trial court's reference to possible further exhibition of the returned unlicensed films at the peril of additional criminal prosecution. The holding below in effect draws a complete analogy to seizure of material in support of a criminal prosecution for obscenity, as in *Heller v. New York.* There, it was said that "on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding." 413 U.S. at 492-93, 93 S. Ct. at 2795, 37 L. Ed. 2d at 754. Here the film was seized as evidence, not of violation of a criminal obscenity statute, but as evidence of an alleged violation of the licensing requirements of the censorship statute. It is a distinction which makes a difference.

Basically we are dealing with a by-product of a censorship system. The present Maryland scheme has been held to be valid, and its facial constitutionality is not raised again here. If one starts from the premise of facial validity it follows that a criminal sanction for failure to comply with the scheme is permissible and material which evidences non-compliance may be seized. While the "only valid standard for disapproval of a film under the Act … is obscenity," *Sanza v. Md. St. Bd. of Censors, supra,* 245 Md. at 338, 226 A.2d at 327, the basis of the violation charged in this case is not obscenity, but exhibiting of films which have not been submitted to the Board. The seizure of the films here was because they are said to lack the certification of the Board. Content of the film is immaterial to the offense charged. The restraint imposed by the seizure as evidence is part of the restraint imposed by the whole censorship scheme.

This may be contrasted with a seizure of a film for use as evidence of the violation of an obscenity statute, as occurred in *Roaden v. Kentucky,* 413 U.S. 496, 93 S. Ct. 2796, 37 L. Ed. 2d 757 (1973). There a conviction was reversed because of the admission in evidence of the film which was held to have been illegally seized. The Supreme Court, in addressing the interface between the Fourth and First Amendments, reviewed its decisions in *Marcus v. Search Warrant,* 367 U.S. 717, 81 S. Ct. 1708, 6 L. Ed. 2d 1127 (1961), *A Quantity of Books v. Kansas,* 378 U.S. 205, 84 S. Ct. 1723, 12 L. Ed. 2d 809 (1964) and *Lee Art Theatre, Inc. v. Virginia,* 392 U.S. 636, 88 S. Ct. 2103, 20 L. Ed. 2d 1313 (1968) and stated:

> The common thread of *Marcus, A Quantity of Books,* and *Lee Art Theatre* is to be found in the nature of the materials seized and the setting in which they were taken .... In each case the material seized fell arguably within First Amendment protection, and the taking brought to an abrupt halt an orderly and presumptively legitimate distribution or exhibition. Seizing a film then being exhibited to the general public presents essentially the same restraint on expression as the seizure of all the books in a bookstore. [413 U.S. at 503-04, 93 S. Ct. at 2801, 37 L. Ed. 2d at 764].

But in a state which imposes a system of motion picture censorship, the commercial exhibition of unlicensed film is not presumptively legitimate. We think that the observation in *Heller* that "the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue" was made in much the same context as the above statement in *Roaden.* The *Heller* observation presupposes a setting in which there is no pervasive scheme of motion picture censorship. The statement in *Heller* simply does not contemplate the Maryland aberration.

More fundamentally, the freedom from prior restraint rests not only on a personal right to express ideas, but also

on the right of the public to have access to information and ideas. *See, e.g., Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 62, 96 S. Ct. 2440, 2448, 49 L. Ed. 2d 310, 321 (1976) (zoning restriction created no prior restraint where no showing that "viewing public is unable to satisfy its appetite for sexually explicit fare"); *A Quantity of Books, supra,* 378 U.S. at 224, 84 S. Ct. at 1733, 12 L. Ed. 2d at 821 ("It is vital to the operation of democratic government that citizens have facts and ideas on important issues before them. A [restraint] of even a day or two may be of crucial importance in some instances." (Harlan, J. dissenting)); *Grosjean v. American Press Co.,* 297 U.S. 233, 247, 56 S. Ct. 444, 448, 80 L. Ed. 660, 667 (1936) (statute constituted a prior restraint because it would "curtail the opportunity for the acquisition of knowledge by the people . . . .") *See generally* Litwack, *The Doctrine of Prior Restraint,* 12 Harv. Civ. R.-Civ. Lib. L. Rev. 519, 534, 543 (1977). The scope of the right of the public in Maryland has been circumscribed by a system of prior restraint which has been held valid by the Supreme Court, by this Court and by the United States District Court for the District of Maryland. Under a valid system "the State may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films . . . ." *Freedman v. Maryland, supra,* 380 U.S. at 58, 85 S. Ct. at 739, 13 L. Ed. 2d at 654. The public in Maryland has no right to witness at a commercial exhibition an unlicensed film. It follows that the appellees have no right commercially to exhibit an unlicensed film. Thus, the State did not unconstitutionally apply Art. 66A, § 19 (b) as to. the appellees and it was error for the court below to dismiss the charging documents.[7]

> *Judgment of the Criminal Court of Baltimore reversed and cases remanded for further proceedings. Costs to be paid by the appellees.*

---

7. Both the court below and the appellees have made reference to a taking of property without due process of law. However, this point was not briefed by the appellees, or enunciated by the court below, as a proposition distinct from the First Amendment considerations reviewed above.