471 A.2d 1090
**Baxter MACON**

v.

**STATE of Maryland.**

**No. 226, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

March 2, 1984.

706

Harry A. Baumohl, Burton W. Sandler, on brief, Towson, for appellant.

Ann E. Singleton, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Arthur A. Marshall, Jr., State's Atty. for Prince George's County and Eugene H. Whissel, II, Asst. State's Atty., on brief, for appellee.

Argued before BISHOP, ADKINS and MORTON, JJ.

BISHOP, Judge.

On September 21, 1981, a Prince George's County jury convicted the appellant, Baxter Macon, of violating Article 27, section 418 of the Maryland Annotated Code, which prohibits knowing distribution of obscene material. Fined $500.00 plus $75.00 court costs, appellant asks:

I. Were law enforcement officers required to obtain a judicial determination that there was probable cause to believe the matter distributed by appellant was obscene before they could seize it and arrest him?

II. Did the State fail to prove that appellant distributed obscene matter knowingly?

III. Does the First Amendment protect distribution of material that has not yet been judicially declared obscene?

We reverse on the basis of the first issue, and therefore need not address the other two.

## Facts

As part of an investigation of adult bookstores in Prince George's County, Detective Ray Evans entered the Silver News adult bookstore, browsed for about twenty minutes and then selected for purchase two magazines enclosed in a clear plastic wrapper. Detective Evans paid appellant with a fifty dollar bill, from which was taken the $12.00 charge for the magazines. Appellant placed the magazines in a brown paper bag and returned them to Evans, who then left the store. Detectives Sweitzer and Fickinger, who had been

waiting in a car parked on a nearby lot, viewed the magazines and decided that, in their opinion, the magazines were obscene matter. Without consulting a judicial officer, they then entered the bookstore with Evans and placed appellant under arrest. They allowed appellant to usher out patrons and close the store before taking him away in handcuffs. When they made the arrest, the officers retrieved the fifty dollar bill that had been used for the "purchase;"[1] they did not return the change.

### Law

Because there was no prior judicial determination of obscenity, and therefore no warrant authorizing the officers to seize the alleged obscene matter or arrest its distributor, appellant argues that the trial court should have suppressed the magazines and dismissed the charges.

### A.

The primary question presented for our consideration, then, is whether a judicial officer must decide that there is probable cause to believe that matter is obscene before the matter or its distributor may be seized. We conclude, based on the ensuing analysis, that a warrant is needed to provide a procedural safeguard for freedom of expression protected by the First Amendment. The Supreme Court has declared:

> "We held in *Roth v. United States,* 354 U.S. 476, 485 [77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498], that 'obscenity is not within the area of constitutionally protected speech or press.' But in *Roth* itself we expressly recognized the complexity of the test of obscenity fashioned in that case, and the vital necessity in its application of safeguards to prevent denial of 'the protection of freedom of speech and press for material which does not treat sex in a manner appealing to prurient interest.' *Id.* p. 488 [77 S.Ct. at 1310]. We have since held that a State's power to sup-

---

1. For reasons stated, *infra,* we hold that this "purchase" amounts to an unlawful seizure.

press obscenity is limited by the constitutional protections for free expression.

*	*	*	*	*	*

"... [T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn.... The separation of legitimate from illegitimate speech calls for ... sensitive tools...." *Speiser v. Randall,* 357 U.S. 513, 525 [78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460]. It follows that, under the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity as here involved without regard to the possible consequences for constitutionally protected speech."

*Marcus v. Search Warrant,* 367 U.S. 717, 730, 731, 81 S.Ct. 1708, 1715, 1716, 6 L.Ed.2d 1127 (1961). *Accord Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 65–66, 83 S.Ct. 631, 636–637, 9 L.Ed.2d 584 (1963); *A Quantity of Books v. Kansas,* 378 U.S. 205, 212, 84 S.Ct. 1723, 1726, 12 L.Ed.2d 809 (1964); *Tyrone, Inc. v. Wilkinson,* 410 F.2d 639, 641 (4th Cir.1969); *Europa Books, Inc. v. Pomerleau,* 41 Md.App. 114, 121, 395 A.2d 1195 (1979).

 The need to protect first amendment rights from government suppression necessitates more stringent application of fourth amendment safeguards in obscenity cases than in other criminal cases. *Zurcher v. Stanford Daily,* 436 U.S. 547, 564–65, 98 S.Ct. 1970, 1980–81, 56 L.Ed.2d 525 (1978); W. LaFave, *Search and Seizure* § 6.7(e) (1978); 50 Am.Jur.2d, *Lewdness, Indecency and Obscenity,* § 12 (1970). Primary among these safeguards is the warrant requirement. The complexity of the test for obscenity, and the need to ensure that constitutionally protected speech is not discouraged, require that the probable cause determination of obscenity be entrusted not to the police officer, who may lack legal expertise or impartiality, but to the judicial officer, whose knowledge of the law, coupled with his neutrality and detachment, qualify him to make such a decision. In *Marcus v. Search Warrant, supra,* the Supreme Court found

that a search warrant authorizing police to seize "obscene ... publications", with no definition of this term to circumscribe their discretion, lacked sufficient particularity:

"It is no reflection on the good faith or judgment of the officers to conclude that the task they were assigned was simply an impossible one to perform with any realistic expectation that the obscene might be accurately separated from the constitutionally protected. They were provided with no guide to the exercise of informed discretion, because there was no step in the procedure before seizure designed to focus searchingly on the question of obscenity." 367 U.S. at 732, 81 S.Ct. at 1716.

*Accord Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). *See also Lee Art Theatre v. Virginia,* 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968) (warrant must be based on more than an officer's conclusory assertion of obscenity).

In *Roaden v. Kentucky,* 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), a county sheriff viewed a sexually explicit film, then, acting without a warrant, arrested the theatre manager and seized one copy of the film. The Supreme Court found that protection of first amendment freedoms could not be left to the whim of a law enforcement officer:

"The setting of the bookstore or the commercial theater, each presumptively under the protection of the First Amendment, invokes such Fourth Amendment warrant requirements because we examine what is 'unreasonable' in the light of the values of freedom of expression.

\* \* \* \* \* \*

The seizure proceeded solely on a police officer's conclusions that the film was obscene; there was no warrant. Nothing prior to seizure afforded a magistrate an opportunity to 'focus searchingly on the question of obscenity.' *See Heller v. New York, ante,* [413 U.S. 483 at 488–489 [93 S.Ct. 2789 at 2792–2793, 37 L.Ed.2d 745 (1973) ]; *Marcus v. Search Warrant,* 367 U.S. at 732 [81 S.Ct. at 1716]. If, as *Marcus* and *Lee Art Theatre* held, a warrant for seizing allegedly obscene material may not issue on the mere

conclusory allegations of an officer, *a fortiori,* the officer may not make such a seizure with no warrant at all. 'The use by government of the power of search and seizure as an adjunct to a system for the suppression of objectionable publications is not new. . . . The Bill of Rights was fashioned against the background of knowledge that unrestricted power of search and seizure could also be an instrument for stifling liberty of expression.' *Marcus v. Search Warrant, supra,* at 724, 729 [81 S.Ct. at 1714]." *Id.* 413 U.S. at 504, 506, 93 S.Ct. at 2802.

 Thus, consideration of first amendment rights necessitates obtention of a judicial warrant as a precondition to seizure of allegedly obscene materials.[2] *Zurcher v. Stanford Daily, supra,* 436 U.S. at 565, 98 S.Ct. at 1981; *Flack v.*

---

**2.** The Court established one exception to the warrant requirement, when police are faced with a "now or never" situation in which they must seize the allegedly obscene material or its distributor instantly or lose the opportunity. 413 U.S. at 505–06, 93 S.Ct. at 2801–02. We are not convinced that there were such exigent circumstances in this case. On the contrary, it appears that the Silver News book store was a continuing business that had been in operation at the same location for five to six years. There is nothing in the record to indicate that appellant or the magazines would not have been subject to seizure after the time required to have a neutral magistrate review the material and make a probable cause determination of obscenity. Cf. *Gotlieb v. State,* 406 A.2d 270, 273–75 (Del.1979) (continuing business).

The hearing to obtain a warrant need only be *ex parte,* not adversarial. In *Heller v. New York,* 413 U.S. 483, 488, 93 S.Ct. 2789, 2792, 37 L.Ed.2d 745 (1973) the Supreme Court stated that it had never held or implied the need for an adversarial hearing prior to initially seizing samples of allegedly obscene materials. It did not perceive that an adversary hearing would protect first amendment rights significantly better than an *ex parte* proceeding. *Id.* at 493, 93 S.Ct. at 2795. See also *Roaden v. Kentucky,* supra, 413 U.S. at 505 n. 5, 93 S.Ct. at 2801 n. 5; *Lo-Ji Sales, Inc. v. New York,* supra, 442 U.S. at 327–28, 99 S.Ct. at 2324–25 (distinguishing final restraint effected by large-scale seizure); *Milky Way Productions, Inc. v. Leary,* 305 F.Supp. 288, 296–97 (S.D.N.Y.1969) (Frankel, J.), aff'd. 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970). For the same reason, an adversarial hearing is not a necessary precondition to issuance of a warrant to arrest the alleged purveyors of obscene material. *United States v. Green,* 284 A.2d 879, 882 (D.C.App.1971); *Adler v. Pomer-*

*Municipal Court for Anaheim-Fullerton, J.D.,* 66 Cal.2d 981, 59 Cal.Rptr. 872, 429 P.2d 192 (1967); *State of New Jersey v. Parisi,* 76 N.J.Super. 115, 183 A.2d 801 (1962). *See generally Annot.,* 5 A.L.R.3d 1214 § 4 (1966).

The same reasoning applies to seizure of persons allegedly distributing such materials.

■ A warrantless arrest is another type of seizure constitutionally required to be reasonable; *Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980). "An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause...." *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964). Such safeguards are especially important in a case such as this, due to the aforementioned threat the police action poses to constitutionally protected speech.

■ In *Penthouse International, Ltd. v. McAuliffe,* 610 F.2d 1353 (5th Cir.1980) the state claimed that police officers could arrest suspects for crimes committed in the officers' presence, including distribution of obscene matter. The Fifth Circuit Court of Appeals responded:

"The problem with appellant's claim is that the ability to make a warrantless arrest for an offense committed in the officer's presence contemplated the officer's ability to determine that an offense has actually been committed. Appellant is attempting to apply a statute normally appropriate for the case of a fleeing robber to items presumptively protected by the First Amendment. Appellant is incorrect in his belief that he or his agents may properly make the initial determination concerning the obscenity of a publication and that he may make a warrantless arrest if he determines that the subject matter of a publication is obscene." *Id.* at 1359.

Consequently, a necessary predicate to seizure of the person, as well as the allegedly obscene matter he distributes, is a

---

*leau,* 313 F.Supp. 277, 286 (D.Md.1970) (3-judge court). An *ex parte* hearing will suffice.

prior judicial determination that there is probable cause to believe the matter is obscene. *See also Hall v. State,* 139 Ga.App. 488, 229 S.E.2d 12 (1976); *Delta Book Distributors, Inc. v. Cronvich,* 304 F.Supp. 662, 667 (E.D.La.1969). *But see Price v. State,* 579 S.W.2d 492, 495 (Tex.Cr.App.1979); *Carlock v. State,* 609 S.W.2d 787 (Tex.Cr.App.1980).

A group of cases strikingly similar to appellant's were decided in *State v. Furuyama,* 64 Hawaii 109, 637 P.2d 1095 (Haw.1981). In some of those cases, plainclothes police officers purchased allegedly obscene magazines, then confiscated the purchase money and arrested the sellers. The *Furuyama* court, citing the long line of Supreme Court decisions to which we have alluded, observed that:

"the Supreme Court 'has been scrupulous in its insistence that the sensitive task of distinguishing legitimate from illegitimate speech be confided in a judicial office, rather than in the police. *Lee Art Theatre v. Virginia, supra; Marcus v. Search Warrant, supra.*'" Id. at 1100.

It held accordingly that:

"a police officer may not effect a warrantless arrest in a setting where first amendment freedoms are implicated.

\* \* \* \* \* \*

[J]ust as an officer's conclusory opinion that arguably protected material is pornographic does not give rise to probable cause supporting the issuance of a warrant authorizing its seizure . . ., such opinion cannot sustain the warrantless arrest of its putative promoter. *See Roaden v. Kentucky, supra,* 413 U.S. at 504–506, 93 S.Ct. at 2801–2802; *Marcus v. Search Warrant, supra,* 367 U.S. at 731–32, 81 S.Ct. at 1715–1716. . . .

Thus the arrests of defendants cannot be upheld, for they were all premised on the ad hoc obscenity determinations of police officers; nor can we approve seizures of evidence incident thereto." *Id.* at 1100–1101.

### B.

The State argues that appellant is not constitutionally entitled to the remedies of suppression or dismissal because

the magazines were purchased, not seized, and an illegal arrest does not void subsequent conviction. These same contentions were raised in *Furuyama.* The court answered that such a holding would impermissibly circumvent first amendment protections:

"Still, we are instructed by the Court that '[c]onstitutional provisions for the security of person and property are to be liberally construed, and "it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.'" *Byars v. United States,* 273 U.S. 28, 32, 47 S.Ct. 248, 249, 71 L.Ed. 520 (1927) (citations omitted). Therefore, we are obliged to scrutinize the circumstances surrounding the transactions in the foregoing light to decide whether the enforcement practices in question were covered by the constitutional provisions regulating searches and seizures.

Though the State insisted the magazines were bought, the circuit court found the 'purchases' actually were 'preconceived seizures.' A review of the record convinces us that every aspect of the missions in search of pornograhy and its purveyors was prearranged, including the repossession of the money given in 'payment' for the evidence. Yet, an element essential to the validity of the seizures, judicial concurrence regarding the obscene nature of the evidence, was missing. And the failure to seek a judge's opinion on the obscenity *vel non* of the publications could not have been inadvertent. Viewing the transactions in their entirety, we also believe they were 'preconceived seizures,' designed in part to evade that phase of the warrant procedure whose specific purpose is the protection of first amendment freedoms.

What is particularly objectionable here is that the alleged purchase in every instance, as part of a single planned transaction, was immediately followed by a warrantless arrest and the seizure of the money given in exchange for the allegedly obscene matter. Such a transaction, in our opinion, could not have been a purchase;

there was no intent to part with the money as in an ordinary sale. And the appropriation of the allegedly obscene material and tangible evidence of the transaction was tantamount to a warrantless seizure. While somewhat similar practices have been ratified in different contexts, *see, e.g., Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), first amendment considerations militate against the approval of transactions expressly designed to evade specific warrant requirements governing the seizure of material arguably subject to constitutional protection.

\* \* \* \* \* \*

We are unable to sanction the seizures of evidence here, for we would then be party to the nullification of a Court-decreed 'sensitive tool' to separate 'legitimate from illegitimate speech.' *Speiser v. Randall, supra,* 357 U.S. at 525, 78 S.Ct. at 1341–1342. An aspect of the warrant procedure tailored to protect first amendment freedoms could not have been meant for easy evasion with a modicum of ingenuity." *Id.* at 1101–02.

*But see Hildahl v. State,* 536 P.2d 1298, 1301 (Okl.Cr.1975); *State v. Richardson,* 506 S.W.2d 488, 489 (Mo.App.1974).

■ We agree that the protection afforded by the first amendment may not be circumvented by such artifice. Free expression is, by its nature, vulnerable to grossly damaging yet barely visible encroachments, and must be girded about by the most rigorous procedural safeguards. *Bantam Books, Inc. v. Sullivan, supra,* 372 U.S. at 66, 83 S.Ct. at 637. To permit the police, as a rule, to follow the practice used in this case would elevate form over substance, effectively sanctioning an "end run" around those safeguards. *Id.* at 67, 83 S.Ct. at 637; *Penthouse International, Ltd., v. McAuliffe,* 610 F.2d 1353, 1360 (5th Cir.1980). We hold, accordingly, that the officers constructively seized the magazines in contravention of the constitutionally mandated warrant procedure.

■ The proper remedy for such a warrantless seizure is to exclude from trial the evidence so acquired; this has the

virtue of deterring such misconduct and ameliorating its chilling effect on free expression. *State v. Furuyama, supra,* 637 P.2d at 1104–05.

The *Furuyama* court did acknowledge, however, that warrantless arrests do not bar prosecution.

■ The general rule, followed almost unanimously in state and federal courts, is that illegal arrest does not void a subsequent conviction. *United States v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980); *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975); *Matthews v. State,* 237 Md. 384, 387–88, 206 A.2d 714 (1965); *Holiday News v. State,* 53 Md.App. 344, 348–49, 453 A.2d 151 (1982); *Hunt v. State,* 601 P.2d 464, 466–67 (Okl.Cr.1979). *See generally* W. LaFave, *Search and Seizure,* § 1.7(b) at 152–53 (1978); 5 Am.Jur.2d, *Arrest* § 116 (1962); 22 C.J.S. Criminal Law, § 144 (1961). *But see United States v. Toscanino,* 500 F.2d 267 (2d Cir.1974).

■ Appellant is not, however, left without a remedy for his unconstitutional arrest, as it furnishes an additional basis for exclusion of the magazines. The first amendment proscribes suppression of free expression even when publications are not seized in violation of the Fourth Amendment. In *Bantam Books, Inc. v. Sullivan, supra,* a government commission suppressed certain materials by informing distributors that it would recommend prosecution. The Court ruled that this intimidating practice was a system of informal censorship, violative of the first and fourteenth amendments. In *Penthouse, Ltd., v. McAuliffe, supra,* police investigators, in a concerted effort to discourage distribution of allegedly obscene materials, followed a procedure of purchasing magazines and examining their contents. If they though a magazine was obscene, they would ask the retailer if he was aware of its contents. If he said yes, he was arrested without a warrant; if he said no, the officers would return the next day and arrest him without a warrant if the magazine was still being displayed. The publishers sought to enjoin this practice as violative of the first and fourteenth

amendments. The government claimed that it did not "seize" anything, since retailers and wholesalers, confronted with a campaign of warrantless arrests, "voluntarily" withdrew the publications from their shelves. The Fifth Circuit rejected this lame characterization:

"[The State] was attempting to control items that are presumptively protected material because of the language of the First Amendment.... Therefore, a retailer or distributor of presumptively protected material must be afforded greater procedural safeguards before a seizure or 'constructive seizure' may take place. *Roaden v. Kentucky,* 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973).

\* \* \* \* \* \*

It cannot be said that the retailers of the magazine in question 'voluntarily' removed the magazines from their shelves. As in *Bantam Books,* the procedure adopted ... was a 'constructive seizure' and constituted a prior restraint." 610 F.2d at 1359, 1360.

The arrest in this case, moreover, forced appellant, who was the only employee in the store at that time, to usher out customers and close the store. *Cf. State v. Huddleston,* 412 A.2d 1148, 1158 (Del.Super.1980) (arrest of only employee closed adult bookstore). For this reason, the arrest was more severely suppressive than the seizure of the two magazines, for it foreclosed public access as effectively as seizing all of the store's publications. The arrest thus

"brought to an abrupt halt an orderly and presumptively legitimate distribution or exhibition .... Such precipitate action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards."

*Roaden v. Kentucky, supra,* 413 U.S. at 504, 93 S.Ct. at 2801, quoted in *State v. Denten Corp.,* 288 Md. 178, 189–90, 416 A.2d 271 ("More fundamentally, the freedom from prior restraint rests not only on a personal right to express ideas, but also on the right of the public to have access to information and ideas.").

The courts must be especially vigilant in applying procedural safeguards to discourage government officials from stifling the exercise of first amendment rights. To permit the warrantless arrest in this case to go unremedied would merely license a continuation of this practice, circumventing the safeguards and denying the rights. To prevent such circumvention, we therefore hold that where, as here, law enforcement officers arrest a suspected distributor of obscene matter without a warrant authorizing seizure of either the distributor or the matter, the proper remedy is to exclude evidence of the allegedly obscene matter acquired in connection with that arrest.[3]

Since the matter taken from the Silver News bookstore should have been excluded from appellant's trial and since without that material there would be insufficient evidence to convict, we reverse this conviction and direct that the charges be dismissed. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

JUDGMENT REVERSED.

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.

---

**3.** The holding in this case is limited to First Amendment rights and is not to be construed as a modification of traditional Fourth Amendment rulings.