OPINION OF THE COURT
Michael A. Gary, J.
I. PROCEDURAL HISTORY
On November 24, 1987 a Mapp and Huntley hearing was *487 held before Judicial Hearing Officer Morris Goldman to determine whether certain physical evidence and a statement allegedly made by the defendant should be suppressed. The only witness to testify at the hearing was the arresting officer, Police Officer Thomas Smith. His testimony was found to be credible, sub silentio, by the Judicial Hearing Officer (hereinafter JHO). A transcript of the hearing was sent to me for confirmation of the JHO’s findings and recommendation (CPL 255.20 [4]). The JHO concluded that the statement made by defendant was voluntary and spontaneous, and not in response to questioning. This finding is adopted without need for further review, and defendant’s Huntley motion is denied.
The JHO’s conclusions as to the Mapp motion require more extensive analysis. The JHO’s recommendation to deny defendant’s motion is modified, to the extent of the following findings of fact and conclusions of law. Thus, defendant’s motion to suppress the physical evidence seized is also denied.
II. FINDINGS OF FACT
At the time of the defendant’s arrest Police Officer Thomas Smith was assigned to the Manhattan North Public Morals Division. This unit investigates illegal policy operations. Smith was qualified, on the basis of his police training and previous participation in approximately 30 arrests for promoting gambling, as an expert in the identification of policy records.
On July 30, 1987 Officer Smith was the back-up officer assisting an undercover policy operation. As part of the operation, an undercover police officer would place wagers at various suspected policy locations. After the wager was made, the undercover officer would inform the back-up team of the location the bet was placed and furnish them with a description of the person who took the wager. The back-up team, in plain clothes, would then go to the location, observe it, enter it and upon identifying the suspect from the description given, make an arrest.
At approximately 11:45 a.m. on July 30, 1987 an undercover police officer advised Police Officer Smith that he had just placed a wager at a policy spot located at 3644 Broadway in New York County. The undercover officer described the person who was operating the policy spot and took the wager as a female Hispanic with long brown hair, in her 40’s, wearing a white shirt with a red stripe across it.
Police Officer Smith and two other officers went in an *488 unmarked car and parked across the street from the address given. From the car, Smith observed a few people enter 3644 Broadway and exit shortly after entering. Approximately 25 minutes after receiving the report from the undercover officer, Smith and his partners walked into 3644 Broadway behind another unidentified individual who had just opened the door and walked in. Smith believed the door to be locked, but no inquiry was made at the hearing as to the basis for his belief or the actual condition of the door.
Upon entering, Smith and his partners drew their shields and identified themselves as police officers. From the doorway, Smith observed a paneled area and what appeared to be an empty vestibule, and farther back, a plexiglass window approximately 9 feet across and 3 feet high, built into the rear wall. Behind the plexiglass he observed the defendant who exactly matched the description given by the undercover officer as the person with whom he had placed a bet. The defendant, was standing behind a counter or ledge that bordered the bottom of the plexiglass. On the ledge, on the defendant’s side of the plexiglass, Smith observed both blank and filled-in policy slips, several pens and pencils and a sum of United States currency.
After Officer Smith determined that the defendant was alone behind the counter, he waved to her to move out from behind the plexiglass and into the common area. She exited from a small closed, but not locked, door to the side of the plexiglass. Officer Smith then entered the area from which defendant had just exited and seized the policy slips and currency he had previously observed. As the defendant came out from behind the counter she remarked, spontaneously, "and this was my last day”. She was then placed under arrest.
III. DISCUSSION
At the conclusion of the hearing defendant argued for suppression of the physical evidence on two grounds: (1) the search and seizure of the evidence was in violation of the Fourth Amendment, because it was done without a warrant and (2) suppression was mandated by the holding in People v Roberson (134 Misc 2d 644 [1987]).
Analysis of defendant’s first ground for suppression requires an answer to the threshold question whether Officer Smith’s discovery of the evidence even constituted a search of the area where the policy slips were found.
*489 In defining a "search” for Fourth Amendment purposes, the United States Supreme Court in Katz v United States (389 US 347 [1967]) has enunciated a two-prong "expectation of privacy” test with both a subjective and objective prong. It is important to stress that both prongs need be met to warrant Fourth Amendment consideration. Justice Harlan, in his concurring opinion, stated that Fourth Amendment protection requires "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.’ ” (Katz v United States, supra, at 361.)
In analyzing the first prong, stress lies on whether or not a person has "exhibited” the expectation that his/her activity would be private. Of course, a person in her own home, or legitimate business will be presumed to have subjectively expected privacy and protection from intrusion. (1 LaFave, Search and Seizure § 2.1 [d], at 311 [2d ed].) Similarly, " '[i]f two narcotics peddlers were to rely on the privacy of a desolate corner of Central Park in the middle of the night to carry out an illegal transaction, this would be a reasonable [subjective] expectation of privacy; there would be virtually no risk of discovery.’ ” (1 LaFave, Search and Seizure § 2.1 [d], at 311 [2d ed].) However, Katz’s second prong must also be satisfied.
Particular attention for purposes of the second prong is focused on the nature of the place and activity, for this will determine whether there was a justifiable, i.e., societally condoned, expectation of privacy. " 'Justification, as used here, is intended to be a basis of differentiating those expectations which are merely reasonable from those expectations which are to be constitutionally enforced due to other social considerations.’ ” (1 LaFave, Search and Seizure § 2.1 [d], at 311-312 [2d ed].) Thus, in the example of the narcotics peddlers, " 'if by extraordinary good luck a patrolman were to illuminate the desolate spot with his flashlight, the criminals would be unable to suppress the officer’s testimony as a violation of their rights under the fourth amendment * * * [I]n order for an expectation to be considered justified it is not sufficient that it be merely reasonable’ ”. (1 LaFave, Search and Seizure § 2.1 [d], at 311 [2d ed].) And while it is well settled that the private, commercial property belonging to a legitimate business owner is entitled to Fourth Amendment protection, that part of the business area open to the public is not. (See, Katz v United States, supra, at 351.)
*490 The facts, as proffered here, cannot justify an expectation of privacy in the operation of a policy location. The premises were furnished in a fashion that made no attempt to conceal the gambling activity. There was a common area for players to congregate. In the rear was the plexiglass betting cage with a counter displaying the tools of the trade — pencils, pens and policy slips. Defendant’s business location is structured to be open to the public. It is designed to provide easy access for customers to come in off the street and play their numbers.
Here, Police Officer Smith entered onto the property as part of a police investigation and restricted his movements to an area where visitors were expected to go. His observations made from such a vantage point are not covered by the Fourth Amendment. (See, 1 LaFave, Search and Seizure § 2.4 [b], at 429-435 [2d ed].) A search occurs only when "an expectation of privacy that society is prepared to consider reasonable is infringed”. (United States v Jacobsen, 466 US 109, 113 [1984] [emphasis added].)
In applying Katz’s two-pronged test to the above facts, this court finds that this defendant could not have had any reasonable expectation of privacy in areas of the store where the public was invited to enter and transact business. (See, People v Perez, 78 AD2d 703 [2d Dept 1980].)
Perhaps it can be argued that precisely because of the illegal nature of the business an extra factor of subjective privacy attaches. However, the Supreme Court observed in a case involving the display of obscene material at an adult bookstore: "The mere expectation that the possibly illegal nature of a product will not come to the attention of the authorities, whether because a customer will not complain or because undercover officers will not transact business with the store, is not one that society is prepared to recognize as reasonable * * * The officer’s action in entering the bookstore and examining the wares that were intentionally exposed to all who frequent the place of business did not infringe a legitimate expectation of privacy and hence did not constitute a search within the meaning of the Fourth Amendment” (Maryland v Macon, 472 US 463, 469 [1985] [emphasis added]).
It cannot be said that an illegal gambling site portends to afford a reasonable expectation that the area is private. Since Officer Smith’s observations did not infringe an expectation of privacy of the defendant that society is willing to recognize, there was no search cognizable under the Fourth Amendment, and no warrant was necessary.
*491 Assuming, arguendo, that defendant did have a cognizable privacy right, at the least, in the area behind the plexiglass, this court also sustains the seizure here based on a search incident to a lawful arrest.
It is indisputable that based on the information received from the undercover officer and his own observations, Police Officer Smith had reasonable cause to arrest the defendant for past crimes and for crimes committed in his presence (CPL 140.10 [1] [b]), and to conduct a limited search of the immediate area within her reach and control, for weapons or evidence of the crimes which she could possibly conceal or destroy. (Chimel v California, 395 US 752 [1969].) In this case, Police Officer Smith’s seizure was clearly incidental to defendant’s arrest and the evidence was seized from within the area of her immediate control.
The defendant’s "immediate area”, at the time of arrest, in this case, remained the plexiglass enclosed vestibule, even though defendant was placed under arrest outside of that room. The fortuitous circumstance of where the defendant is placed under arrest should not transform reasonable conduct into misconduct of constitutional dimensions. (See, 1 LaFave, Search and Seizure § 2.4 [b], at 429-433 [2d ed]; cf., People v Roberson, supra.) Here, Police Officer Smith asked the defendant to come out from behind the plexiglass, presumably to insure that she did not destroy the paper evidence before her, and then seized the paper. If he had simply entered the area behind the plexiglass and simultaneously arrested the defendant and seized the evidence, his conduct would not have been any more reasonable than what actually occurred; but it would have the benefit of fitting neatly within the Chimel analysis. As our Court of Appeals has observed "[o]ne must be careful to distinguish between constraints on police conduct which limit effective police enforcement and those constraints which merely make effective police enforcement more burdensome.” (People v Spinelli, 35 NY2d 77, 81 [1974].)
Moreover, the seizure here was reasonable in light of the fact that there was probable cause to believe the entire commercial premises was being operated as an illegal enterprise. (See, People v Hearns, 98 AD2d 690 [1st Dept 1983].) (Cubicle from which drugs sold to police undercover situated between candy store and social club was operated from both locations. Warrantless seizure of drugs and paraphernalia on social club’s bar upheld.)
*492 The second ground advanced for suppression by defense counsel requires some discussion of People v Roberson (supra), a case with quite similar facts. In Roberson, the defendant was arrested in what the court described as the public "players” area and taken to the back by the police behind the plexiglass where they seized the policy slips which had previously been observed in the defendant’s possession. The court held, inter alia, that the defendant had an expectation of privacy in the area behind the plexiglass; that the plain view doctrine justified the officer’s observations of the physical evidence but not its warrantless seizure because there were no exigent circumstances. This court respectfully disagrees with that holding.
The plain view exception to a seizure without a warrant must satisfy various elements, as articulated in Coolidge v New Hampshire (403 US 443 [1971]). First, there must be a justifiable, prior valid intrusion, i.e., the police officer must be present lawfully. Here, the police as a result of an undercover investigation made an arrest based on reasonable cause. The evidence taken here was to be found behind a clear, plexiglass window for all to see, satisfying the second requirement that the evidence be in "plain view” of the police officer.
However, a police officer’s plain view alone is never enough to justify the warrantless seizure of evidence. (Coolidge v New Hampshire, supra.) Discovery of the evidence must also be inadvertent, and some exigency must exist to justify its immediate seizure. (People v Spinelli, supra.)
This court is convinced that the facts as adduced at the hearing also satisfy the latter two requirements. There was nothing in the testimony to suggest that Officer Smith knew beforehand that gambling records would be found at 3644 Broadway and therefore their discovery was inadvertent. (Coolidge v New Hampshire, supra, at 469, 482; 2 LaFave, Search and Seizure § 4.11 [c], at 350 [mere anticipation does not equal prior knowledge]; cf., People v Spinelli, supra [stolen property observed by police on defendant’s property two weeks before seizure was not in plain view].) This court is also satisfied that the circumstances of defendant’s arrest were such that it was neither feasible nor necessary to obtain a search warrant. An exigent circumstance existed in that the evidence was located within the defendant’s immediate area at the time of her arrest. (See discussion supra.)
A second exigency was presented by the fact that numerous unidentified individuals w^ere observed entering and exiting *493 the premises at the time of defendant’s arrest. Moreover, defendant was a member of a policy operation, an illicit enterprise that by its very nature has many confederates. At the time of defendant’s arrest the whereabouts and identification of these individuals were unknown. Contrary to Roberson (supra), this court finds that the possibility this paper evidence could be removed or destroyed was manifest. These facts constituted exigent circumstances to justify a "plain view” warrantless seizure. (People v Jackson, 41 NY2d 146 [1976].)
IV. CONCLUSION
For the reasons discussed in the foregoing opinion there was no Fourth Amendment violation because: (1) defendant had no justifiable expectation of privacy in the area behind the plexiglass; even assuming otherwise, the evidence was seized incident to defendant’s lawful arrest and (2) the plain view doctrine justified the warrantless seizure here. Thus, the Mapp branch of defendant’s motion is denied.