UNITED STATES of America

v.

Billy STANFIELD.

Civ. No. L–95–0191.

United States District Court,
D. Maryland.

Nov. 2, 1995.

Lynne A. Battaglia, United States Attorney, and Philip Jackson, Assistant United States Attorney, for plaintiff.

Stanley H. Needleman, Baltimore, Maryland, for defendant.

## MEMORANDUM

LEGG, District Judge.

Before the Court is defendant Billy H. Stanfield's motion to suppress physical evidence. On September 13, 1995 and October 16, 1995, the Court held evidentiary hearings in which Officers Kevin Buie and Avon Mackel of the Baltimore City Police Department testified. Defendant cross-examined the Government's witnesses and also testified on his own behalf.[1] For the reasons set forth below, the Court hereby DENIES defendant's motion.[2]

## I. FACTS

### A. The Officers' Testimony

Officers Buie and Mackel testified that on morning of April 29, 1994, they and Officer Michael Hamel, also of the Baltimore City Police Department, were patrolling, in an unmarked car, the area around Parrish Street in west Baltimore. The neighborhood surrounding Parrish Street is poor and suffers from a high crime rate and open narcotics trafficking. The officers had no specific objective, but were generally on the look-out for drug activity. Due to the danger of their assignment, the officers were fully armed and wore bulletproof vests over their uniforms.

1. Prior to taking the stand, defendant was informed of the consequences of testifying by both his counsel and the Court. Defendant acknowledged that he understood his rights and agreed to waive his Fifth Amendment privilege for the limited purpose of testifying at this suppression hearing.

2. Defendant's motion originally sought to suppress both the physical evidence found in defendant's car and the physical evidence found in

At approximately 9:00 a.m., the officers were driving eastbound on Mosher Street when they reached the intersection of the 900 block of Parrish Street. Looking south down Parrish Street, they noticed a late model, black Nissan Pathfinder with heavily tinted windows. The Pathfinder was stopped in the middle of the street facing southbound.

As Officer Mackel testified, Pathfinders are of the class of four wheel drive vehicles favored by drug dealers.[3] Deciding to investigate, the officers circled the block. Seeing that the Pathfinder had not moved, they turned onto Parrish Street and drove northbound towards the Pathfinder.

Officer Mackel, who was driving, said that he was attracted to the Pathfinder because it was blocking Parrish Street in violation of Md. Transportation Code Ann. §§ 21–1003(r) and 27–101(a) & (b). Although Parrish Street is narrow and could be mistaken for an alley, it is open to both north and southbound traffic. Officer Mackel's stated that he intended to investigate the Pathfinder and ticket the driver, if warranted.

Once stopped in front of the Pathfinder, the officers quickly left their unmarked car and approached the Pathfinder from both sides. While doing so, they noted that the driver had been talking to a man leaning from a second story window. The officers recognized the man as William Stanton, a known drug dealer.

Officers Hamel and Buie walked up to the Pathfinder from the driver's side while Officer Mackel, acting as back up, walked around to the passenger's side. According to the officers, the front windows on both the passenger's and driver's side were rolled down, allowing them to see into the car from both directions.

Stanfield's apartment during a search subsequent to his arrest. After Government counsel agreed that it would not seek to introduce certain of the seized items at trial, defendant agreed to withdraw the motion to suppress as to the search of his apartment.

3. Pathfinders are also a preferred target of car thieves.

Officers Buie and Hamel began to question Stanfield, asking him for his driver's license and registration. Officer Mackel testified that he looked through the open passenger's side window and saw an overturned brown paper bag on the back seat. The mouth of the bag was open and its contents were partially visible. Officer Mackel testified that he could clearly see, protruding past the mouth of the bag, the tip of a plastic bag containing a light tan substance. Recognizing this substance as cocaine or crack, Officer Mackel called out, "1030," a signal requesting the other officers to place Stanfield under arrest.

Officer Buie testified that prior to hearing Officer Mackel's cry, he had been talking to Stanfield, who appeared calm and cooperative. Upon hearing "1030," Officers Buie and Hamel placed Stanfield under arrest. Later, the officers conducted a thorough search of the Pathfinder and discovered over 200 grams of cocaine, a nine millimeter semi-automatic handgun, two contact pagers, and other items.

### B. Stanfield's Testimony

Defendant concedes that these items were discovered in his car. Stanfield contends, however, that Officer Mackel stopped and search his vehicle without his permission and in violation of the Fourth Amendment. The following reflects Stanfield's version of his arrest.

Stanfield argues that the officers were not attracted to him because of any traffic violation but because they were investigating drug trafficking. The police pulled their car in front of his Pathfinder, effectively blocking him, and quickly exited their vehicle. Stanfield says one of the officers then shouted up to William Stanton and asked Stanton whether he had stopped dealing drugs.

According to Stanfield, only the driver's side window was down and because of the

window's heavy tint, it was impossible for Officer Mackel, standing outside of the Pathfinder, to see the back seat—much less identify any object lying upon it. Officer Mackel, unbidden, opened the passenger door, climbed inside, and searched under the seat, where he discovered Stanfield's hidden bag of cocaine. Officer Mackel then called out, "1030" and Stanfield was placed under arrest. A more thorough search of the car ensued.

### C. The Court's Findings of Fact

 The Court cannot accept the officers' testimony in its entirety. In order to do so, the Court would be required to find that: i) the officers' attention was drawn to the Pathfinder solely because of the traffic violation; ii) the passenger's side window was down; iii) the paper bag containing the bricks of cocaine was on the back seat; and iv) a brick of cocaine was protruding from the mouth of the bag.

By rejecting parts of this scenario, the Court does not find that the officers testified falsely or behaved improperly. The Court concludes only that, because the chain of coincidences exceeds the normal bounds of probability, the Government has failed to meet its burden of proof.[4]

The Court, based upon its assessment of the evidence, finds that the following events most probably occurred. While patrolling, the police saw a late model Pathfinder, a car associated with drug dealing, stopped in the middle of Parrish Street for no apparent reason. Suspecting possible drug activity, they decided to investigate. Because the Pathfinder was stopped in violation of state traffic codes, they were provided the opportunity to do so.

When the police car blocked Stanfield's car and the police surrounded the Pathfinder, Stanfield was effectively seized. No reasonable person in Stanfield's position would have

---

**4.** "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Because the police had no warrant to search Stanfield's Pathfinder, the burden rests on the Government "to show the existence of such an exceptional situation." *United States v. Dart*, 747 F.2d 263 (4th Cir.1984) citing *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970).

felt free to leave. *See e.g., Florida v. Royer,* 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983); *United States v. Wilson,* 953 F.2d 116 (4th Cir.1991).

At that time, only the driver's side window was down[5] and because the windows were heavily tinted, the officers could not see into the Pathfinder. Thus, they did not know whether Stanfield was alone or whether any weapon was within arms reach of the defendant. Officer Mackel, unbidden, opened the passenger side door. He saw on the back seat a paper bag and observed a light tan powdery substance in its mouth.[6] Officer Mackel recognized the substance as cocaine or crack and ordered the arrest of Stanfield. Based on these findings of fact, the Court will examine the Constitutional implications of this event.

## II. *DISCUSSION*

### A. *Seizure of Defendant's Vehicle*

■ The temporary seizure of defendant's car did not violate the Fourth Amendment even if the officers' subjective motivation was to investigate possible drug trafficking. The Supreme Court has long held that whether the Fourth Amendment has been violated turns on "an objective assessment of the officer's actions in light of the facts and circumstances confronting him ... and not

on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon,* 472 U.S. 463, 470, 105 S.Ct. 2778, 2782, 86 L.Ed.2d 370 (1985) (quoting *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

■ Under this objective test, the Court must disregard the officers' subjective motivation and determine if the objective facts gave them the authority to stop Stanfield's car. *United States v. Hassan El,* 5 F.3d 726 (4th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994). It is uncontroverted that the Pathfinder was illegally stopped in the middle of a two-way street. Thus, the officers were permitted to detain Stanfield for the legitimate purpose of investigating this infraction. The traffic violation, no matter how minor, makes the stop permissible.[7]

### B. *Search of Defendant's Car*

■ Police officers expose themselves to danger whenever they approach a car, even during a routine traffic stop.[8] Thus, such officers are entitled to look through the windows to determine how many people are in the car and to ensure that the occupants are not armed or dangerous.[9] The Supreme Court has gone so far as to hold that officers

---

5. Contradictory testimony was provided during the hearing as to the weather on the morning of April 29, 1994. The officers testified that the weather was sunny and warm, while Stanfield testified that the skies were overcast and the temperature cool. Following the evidentiary hearing, the Government submitted the official weather report of the United States Weather Service at Baltimore Washington International Airport. At 9:00 a.m., the temperature was 59 degrees and the sky was cloudy.

 Because the weather was brisk and Stanfield was carrying a bag of cocaine, it seems more likely than not that he would have left the passenger's side window up.

6. The Court rejects Stanfield's testimony that the drugs were located under the car seat and that Officer Mackel found them only after a search. Because of the heavy tint of the windows, Stanfield may have felt that the bag, which was not visible from the outside, was sufficiently hidden. The Court, therefore, accepts Officer Mackel's testimony that the drugs were in plain view (once he opened the car door).

7. In *Hassan El,* the Fourth Circuit held that

 [I]f an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment. That is regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity.
 5 F.3d at 703.

8. The Court notes that in Maryland, police officers making routine traffic stops have been killed by drug couriers. On October 17, 1995, State Trooper Edward A. Plank was shot and killed by two men he had pulled over for speeding. At the time, the two men were transporting $83,000 worth of crack and cocaine and were armed with a semi-automatic .45–caliber handgun.

9. This intrusion is Constitutionally permissible not only for the protection of the police but because the officers are not violating any legitimate expectation of privacy. *Texas v. Brown,* 460 U.S. 730, 740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983).

may even use flashlights to examine the interior of cars during such traffic stops. *Brown,* 460 U.S. 730, 103 S.Ct. 1535.

■ In the instant case, however, the officers, upon approaching the Pathfinder, were unable, due to the heavy tinting of its windows, to see inside the car and determine whether Stanfield was unarmed and alone.[10] Thus, Officer Mackel was Constitutionally permitted to open the door to determine whether there were others in the car and if any weapons were within Stanfield's immediate reach.[11] *Long,* 463 U.S. 1032, 103 S.Ct. 3469.

■ Once the door was open, Officer Mackel saw the bag of cocaine. Because Officer Mackel was legally in a position from which he could see the bag in plain view, Officer Mackel was authorized to seize the cocaine. The officers, therefore, had probable cause to arrest Stanfield and conduct a search of the interior of his vehicle. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

### III. *CONCLUSION*

For these reasons, the defendant's motion to suppress the physical evidence discovered in his vehicle is DENIED.

---

10. Moreover, the officers had seen Stanfield talking to a know drug dealer.

11. Following a legal stop, officers may conduct a *Terry* search of the inside of the vehicle "so long as [the officers] possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Michigan v. Long,* 463 U.S. 1032, 1051, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983). Such searches are limited to that which is necessary to protect the safety of officers. *Maryland v. Buie,* 494 U.S. 325, 335 n. 3, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990).

Because Stanfield was seized pursuant to a traffic stop, had the windows of the Pathfinder been clear, Officer Mackel could not constitutionally have opened the door to look inside unless he saw contraband or was given reason to believe that Stanfield posed a threat to him or his fellow officers.

Here, however, because Officer Mackel was unable to see through the heavily tinted windows of the Pathfinder, he had an objectively reasonable belief that Stanfield (or a hidden passenger) was potentially dangerous.