**UNITED STATES of America**

v.

**Fernando GARCIA.**

**Crim. No. L–95–0126.**

United States District Court, D. Maryland.

Dec. 8, 1995.

---

Lynne A. Battaglia, United States Attorney, and Andrea L. Smith, Assistant United States Attorney, Baltimore, Maryland, for the Government.

James K. Bredar, Federal Public Defender, and Susan M. Bauer, Assistant Federal Public Defender, Baltimore, Maryland, for defendant.

## MEMORANDUM

LEGG, District Judge.

Before the Court is defendant Fernando Garcia's motion to suppress tangible and derivative evidence. On September 8, 1995, the Court held an evidentiary hearing in which the Government called Maryland State Trooper Edward Burnette and Special Agent Edward Marcinko of the Drug Enforcement Agency ("DEA"). Defendant cross-examined the Government's witnesses and called Clifton Cates, a Greyhound bus driver, and Jean Schwartz, a bus passenger, as witnesses. For the reasons set forth below, the Court will DENY defendant's motion, by separate Order.

## I. STATEMENT OF FACTS

On February 9, 1995, members of the DEA and Maryland State Police, including Trooper Edward Burnette and Special Agent Edward Marcinko, were stationed at the Maryland House Rest Area located on I–95 in Harford County, Maryland. The officers were dressed in plain clothes with their weapons concealed. At approximately 5:20 p.m., Burnette approached Clifton Cates, a Greyhound bus driver, and asked him whether all the passengers were aboard Cates' bus and if the officers could enter the bus. Upon receiving an affirmative answer to both questions, Burnette, Marcinko, and Agent Robert Hladun, boarded the bus.

Burnette identified himself and Hladun, said they were part of a drug interdiction team, and asked the passengers for their cooperation in identifying their luggage. Burnette did not threaten the passengers that their luggage was to be searched, nor did he tell the passengers that they had the right not to cooperate with the officers or the right to leave the bus.[1] The officers, Hladun starting in back and moving forward and Burnette starting in the front and moving back, proceeded to ask the passengers to identify their luggage. Defendant Garcia was sitting in the front right seat, and was the first person Burnette approached. Garcia was asked whether he had any bags on the bus. He gave a negative response, and Burnette moved on to the next passenger.

Burnette and Marcinko testified that they talked to the passengers in a normal, conversational tone of voice and spent only enough time with each passenger to determine which bags were owned by whom. Marcinko recalled that the passengers appeared calm and were eager to assist the officers. Burnette and Marcinko were able to complete the identification process in about five minutes.

During the course of their questioning, Burnette noted that a red and black duffle bag, near the front of the bus, had not been claimed. Burnette removed the bag from the overhead rack and using the bus intercom asked whether the bag belonged to anyone. He repeated this question several

---

1. One passenger, Jean Schwartz, testified that the officers boarded the bus and stated that they were "United States Marshals" with a search warrant. Schwartz said she felt that she could not ignore the officers' questions and that she was not free to leave. According to Schwartz, the officers spoke with "authority" but did not intimidate or touch her in any way.

times; when no one claimed the bag it was removed from the bus.

Outside the bus, Burnette placed the bag on the ground and a trained Air Force dog, Lobo, under the control of an Air Force dog handler, was allowed to smell the bag. When Lobo alerted to narcotics, Burnette and Marcinko opened the bag. They found several articles of clothing, a pair of glasses, and heroin. The contents of the bag lead the officers to believe that it belonged to Garcia, who was promptly arrested.

## II. *DISCUSSION*

Defendant argues that the DEA and Maryland State Police acted unlawfully in the following respects: i) the officers' conduct on the bus amounted to an unlawful seizure of Garcia; ii) Burnette unlawfully seized Garcia's property by taking his bag from the overhead rack; and iii) the use of the Air Force dog and handler was a violation of the Posse Comitatus Act. The Court will address each issue in *seriatim*.

### A. *The Bus Boarding*

Garcia argues that his encounter with the officers on the bus constituted an unlawful seizure of his person under the Fourth Amendment. As a result, he contends, any evidence discovered as a result of the boarding of the bus must be suppressed as the "fruit of the poisonous tree." The Government does not maintain that the officers had the reasonable suspicion required to justify a seizure; rather, it argues that Garcia was not seized until after the heroin was found.

Law enforcement officials face few more important or more difficult problems than the stopping the flow of drugs. As Justice Powell noted:

> The public has a compelling interest in detecting those who would traffic in deadly drugs for personal profit. Few problems affecting the health and welfare of our population, particularly our young, cause

greater concern than the escalating use of controlled substances. Much of the drug traffic is highly organized and conducted by sophisticated criminal syndicates. The profits are enormous. And many drugs ... may be easily concealed. As a result, the obstacles to detection of illegal conduct may be unmatched in any other area of law enforcement.

*United States v. Mendenhall,* 446 U.S. 544, 561–62, 100 S.Ct. 1870, 1880–82, 64 L.Ed.2d 497 (1980).

Because drugs are so easily concealable, dealers are able to transport them disguised as legitimate cargo and baggage on planes, trains, automobiles, and buses. In an attempt to stem the flow of drugs, law enforcement officers have developed a number of interdiction programs that concededly stretch the limits of the Constitution. The random boarding of buses is one such program.

While the Supreme Court has rejected the proposition that random boarding of buses without probable cause, in the course of a drug interdiction program, is *per se* an unlawful seizure, such interactions must receive close scrutiny. *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439, 111 S.Ct. at 2389. Relevant factors in assessing the coerciveness of a particular situation include the dress and demeanor of the officers, whether passenger movement was impaired, physical proximity, manner of questioning, and whether weapons were displayed. *United States v. Flowers,* 912 F.2d 707 (4th Cir.1990) *cert. denied,* 501 U.S. 1253, 111 S.Ct. 2895, 115 L.Ed.2d 1060 (1991).[2]

---

**2.** Although *Flowers* was decided before *Bostick,* the Fourth Circuit applied a "totality of the circumstances" test that was subsequently adopted in *Bostick.* Thus, *Flowers* is still relevant precedent in the area of bus searches.

In *Flowers,* two officers, with the driver's permission, randomly boarded a bus as part of a drug interdiction program. *Flowers,* 912 F.2d 707. The officers were dressed in civilian clothing, with badges displayed, and were carrying

■ The conduct of the officers in the instant case closely resembles the conduct approved by the Fourth Circuit in *Flowers*. *See supra* n. 2. Burnette, Marcinko, and Hladun boarded the bus dressed in casual clothing with their weapons concealed. Burnette identified himself as a police officer, said the officers were attempting to interdict narcotics, and asked for the help of the passengers in identifying their on-board luggage.

It is undisputed that the officers talked in a professional tone, without raising their voice, and at no point did the officers touch any of the passengers. Burnette testified that he and Hladun acted courteously and in no way sought to intimidate, physically or verbally, the passengers. Marcinko's testimony corroborated that none of the officers acted in an intimidating manner.[3]

The officers, in their appearance and demeanor, were not threatening.[4] While Hladun and Burnette, by necessity, stood in the aisles while questioning the passengers, Garcia, who was sitting in front, had easy access to the door and could have left the bus.

The initial questioning by the officers took approximately five minutes, and did not significantly delay the bus schedule. Following *Flowers* and *Bostick*, the conduct of the officers, viewed in its totality, did not amount to a seizure under the Fourth Amendment.

**B. *The Appropriation of the Duffle Bag***

By taking Garcia's duffle bag off the overhead rack and removing it from the bus to be sniffed by a dog, defendant argues that Burnette unlawfully seized his bag. The Government contends that the defendant abandoned the bag, and as abandoned property, the officers were permitted to seize and search the bag.[5]

■ It is well established law that the Government can lawfully search and seize abandoned property. *Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). Abandonment can be either actual or constructive. The Fourth Circuit has held when a person denies ownership of a bag that is subsequently searched, the person has effectively abandoned the bag and cannot later argue a violation of the Fourth Amendment. *United States v. Clark*, 891 F.2d 501, 506 (4th Cir.1989) ("denial of ownership ... precludes [a defendant] from arguing ... that he had a reasonable expectation of privacy in [a] suitcase that would give rise to Fourth Amendment protection."); *United States v. Washington*, 677 F.2d 394 (4th Cir.) *cert. denied*, 459 U.S. 854, 103 S.Ct. 120, 74 L.Ed.2d 105 (1982).

concealed weapons. They proceeded through the bus asking the passengers, in a conversational tone, for their identification, destination, and to identify their luggage.

When the officers approached Flowers, they asked him the standard questions and specifically whether a bag directly overhead was his. Flowers denied ownership. One officer held up the bag over his head and repeatedly asked all the passengers whether the bag belonged to anyone. When no one claimed the bag, the officers removed it from the bus and opened it. Among the contents of the bag were a pistol and a quantity of crack cocaine.

The Fourth Circuit held that because the officers were dressed informally and interacted casually with the passenger, did not block the aisle, and did not physically touch the passengers, no seizure had occurred. Under these conditions, a reasonable person would have felt free to refuse to talk to the officers or leave the bus. *Id.*

3. The Court observed both Burnette and Marcinko and found them to be credible.

4. Although Jean Schwartz, a passenger on the bus, testified that she felt as though she would not have been able to ignore the police, her testimony was not sufficient to convince the Court that a seizure occurred. While appearing honest, Schwartz seemed confused about a number of the events that transpired at the Maryland House.

Schwartz testified that Burnette boarded the bus and stated that the officers were "United States Marshals" and that they had a "search warrant." There is no other evidence to substantiate that Burnette made such statements. If the officers had said they had a search warrant, the reasonable passenger would not have felt free to leave or ignore the agents. The Court finds, however, that no such statements were made. Because Schwartz's testimony was confused and based on a faulty recollection of events, the Court cannot equate Schwartz's perceptions with that of the "reasonable person."

5. Whether the officers could have removed all of the luggage from the passengers' compartment for a trained dog to smell, is an issue the Court will not address in this opinion.

■ In *Flowers,* the Fourth Circuit, in dicta, noted that Flowers, a bus passenger, had waived Fourth Amendment protection as to a bag to which he disavowed ownership. *Flowers,* 912 F.2d at 711. The facts of the instant case are similar to those in *Flowers.* Garcia was specifically asked by Burnette whether he had any luggage. Garcia indicated that he had no bags on board. Even when Burnette had removed the duffle bag from the overhead rack and asked the entire bus if anyone owned the bag, Garcia did not respond.

■ Such denial of ownership amounts to the abandonment of the bag. Burnette acted lawfully when he lifted the unclaimed duffle bag from the rack to seek its owner. When no one claimed the bag, which was located in the passenger compartment, it was objectively reasonable for the officers to believe that the bag was abandoned.[6] Thus, the removal and search of the bag did not violate the Fourth Amendment.[7]

## C. *Posse Comitatus Act*

Finally, defendant contends that the DEA's and Maryland State Police's use of an Air Force dog, Lobo, and his handler constituted a violation of the Posse Comitatus Act. The Government argues that Lobo was military equipment on loan to the DEA and that the handler was present only to insure the proper use of said "equipment."

■ The Posse Comitatus Act states that: Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

"The purpose of this Act is to uphold the American tradition of restricting military intrusions into civilian affairs, except where Congress has recognized a special need for military assistance in law enforcement." *United States v. Al–Talib,* 55 F.3d 923, 929 (4th Cir.1995).

■ Congress has authorized the Secretary of Defense to make available any military equipment and personnel necessary for the operation of said equipment to any law enforcement official for law enforcement purposes. 10 U.S.C. §§ 372 & 374 (Supp.1995). The Secretary of Defense has designated military dogs as "equipment" and required military handlers to accompany the dogs as "operators" of the equipment. *See* Gov't Post Hearing Resp.M.Suppress, Ex. B. Thus, the loan of trained dogs to law enforcement officers is sanctioned by Congress. Because the use of Lobo to detect narcotics in Garcia's bag was authorized by Congress, the DEA and Maryland State Police did not violate the Posse Comitatus Act.

## III. *CONCLUSION*

Because the conduct of the officers in boarding the bus did not constitute a seizure of the passengers and because Garcia effectively abandoned his bag, the evidence obtained from the search of the bag may not be suppressed as the "fruit of the poisonous tree." Moreover, because a military dog is equipment, the use of the dog and his handler, by the DEA, was not a violation of the Posse Comitatus Act. For these reasons, the defendant's motion to suppress the physical evidence discovered in his bag is DENIED.

---

**6.** In asking the passengers to identify their bags, the officers may subjectively hope that a courier will be too afraid to admit ownership of a bag containing drugs. Thus, because such a bag would appear abandoned, the officers would be able to examine it without implicating the Fourth Amendment. This Court, however, must examine the objective reasonableness of police conduct and not examine their subjective motivation. *Maryland v. Macon,* 472 U.S. 463, 470, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (whether the Fourth Amendment has been violated turns on "an objective assessment of the officer's actions in light of the facts and circumstances confronting him ... and not on the officer's actual state of mind at the time the challenged action was taken.").

**7.** Burnette ordered a trained dog to sniff the bag and only opened the bag after the dog alerted to the presence of drugs. Burnette's actions were less intrusive than those sanctioned in *Flowers,* where the abandoned bag was simply opened and searched.