POOLER, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s excellent analysis of the line between United States v. Jones, — U.S. -, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), on the one hand, and United States v. Knotts, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), and United States v. Karo, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), on the other hand. Indeed, had Defendants pressed the same analysis before the district court, I would join the majority in holding that Defendants had successfully shifted the burden to El-Nahal to “come forward with specific evidence demonstrating the existence of a genuine dispute of material fact” on the issue of El-Nahal’s property interest in the taxi at the time of the alleged trespass, Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011), and that El-Nahal failed to meet this burden.
I disagree, however, that Defendants “point[ed] out to the district court ... an absence of evidence to support the non-moving party’s case.” Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The majority relies on Defendants’ statements that “the initial placement of the monitor was not at issue,” Defs.’ Mem. of L. in Supp. at 460, 469-70 (S.D.N.Y. 2014) (No. 13-cv-3690 (KBF)), ECF No. 30, that because the “physical placement of the GPS device in the vehicles is not at issue” Jones “has little or no relevance in Plaintiffs claim,” Defs. Mem. of L. in Supp. at 11, and the analysis following the heading “There Was No Trespass on Plaintiffs Person or Property Constituting a Search,” the only even arguably relevant portion of which merely again stated that “the physical placement of the GPS device in the vehicles is not at issue.” Defs.’ Reply Mem. of L. in Supp. at 7, El-Nahal v. Yassky, 993 F.Supp.2d 460, 469-70 (S.D.N.Y. 2014) (No. 13-cv-3690 (KBF)), ECF No. 36. Thus, in 64 pages of briefing by Defendants, the only statement referring to an absence of evidence on the point of El-Nahal’s interest in the taxi at the time of the trespass is that “the physical placement of the GPS device in the vehicles is not at issue.” I, quite frankly, do not know what this statement means. While the majority draws nuanced lines between Jones and Knotts and Karo, showing the importance of an ownership interest at the time of the trespass, at most Defendants implicitly hint at such a distinction. I do not think this was sufficient to shift the burden to El-Nahal to provide evidence of his property interest in the taxi.
It is evident, moreover, that the district court did not read these statements in the *258 same manner as does the majority, as the district court held that Jones did not control on the grounds that the trespass in Jones was surreptitious, that taxis are not truly private property, and that the system was installed pursuant to regulations. See El-Nahal v. Yassky, 993 F.Supp.2d 460, 467-68 (S.D.N.Y. 2014). Although I agree that the majority need not reach these issues, see Maj. Op. at 253 n.3, in my view, they were decided incorrectly.
As an initial matter, I cannot agree that the surreptitious nature of the intrusion was a critical factor to the holding in Jones. Beyond the fact that the Jones majority never characterized the intrusion in this manner, its reasoning expressly disclaimed any reliance on the target’s expectations regarding the possibility of surveillance. The physical invasion of a constitutionally protected area is no less actionable under the Fourth Amendment merely because it is conspicuous. See, e.g., United States v. Isiofia, 370 F.3d 226, 232-33 (2d Cir. 2004) (holding that a war-rantless home search was unconstitutional where the defendant witnessed the search and gave consent, later found to be involuntary).[1] To hold otherwise would allow the government to conduct unreasonable searches merely by announcing them. But the government could not, for instance, eliminate the Fourth Amendment’s protection of “homes, papers, and effects” if it “were suddenly to announce on nationwide television that all homes henceforth would be subject to warrantless entry.” Smith v. Maryland, 442 U.S. 735, 740 n.5, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Accordingly, El-Nahal’s awareness of the GPS does not preclude the finding that the surveillance entailed a search.
Nor, in my view, is the fact that the GPS was installed pursuant to an administrative rule dispositive. On numerous occasions, the Supreme Court has addressed statutes and regulations implicating Fourth Amendment rights. For instance, in Grady v. North Carolina, — U.S.-, 135 S.Ct: 1368, 191 L.Ed.2d 459 (2015), the Supreme Court applied Jones’s, reasoning in evaluating a state statute mandating the satellite-based monitoring of certain categories of recidivist sex offenders. By unanimous opinion, the Court concluded that “a State ... conducts a search when it attaches a device to a person’s body, without consent, for the purpose of tracking that individual’s movements,” id. at 1370, a decision not changed by the fact that this search was conducted pursuant to statute. See id. at 1371 (rejecting argument that this was not unconstitutional because the “State’s monitoring program is civil in nature”); see also Maryland v. King, — U.S. -, 133 S.Ct. 1958, 1968-69, 186 L.Ed.2d 1 (2013) (considering the constitutionality under the Fourth Amendment of DNA swabs taken pursuant to Maryland statute). Most recently, in City of Los Angeles v. Patel, — U.S.-, 135 S.Ct. 2443, 192 L.Ed.2d 435 (2015), the Supreme Court struck down a city ordinance requiring hotels to permit the warrantless inspection of their guest records on the basis that it authorized a regime of unreasonable searches without opportunity for precompliance review. Id. at 2447-48, 2451-53. Plainly, the government’s physical intrusion on a constitutionally protected area is subject to Fourth *259 Amendment scrutiny even if the intrusion is authorized by municipal regulations.
With respect to whether the taxi was constitutionally protected property, the district court answered in the negative, reasoning that “[t]he pervasive regulation of taxis and their openness to public use distinguishes them from the truly private property at issue in Jones.” El-Nahal, 993 F.Supp.2d at 467 (emphasis added). Although I agree that taxicabs differ from noncommercial vehicles in important respects, in my view, these distinctions do not strip them of all Fourth Amendment protections. If the taxi was El-Nahal’s private personal property, Jones dictates that such property qualifies as “an ‘effect’ as that term is used in the [Fourth] Amendment.” 132 S.Ct. at 949 (“It is important to be clear about what happened in this case: The Government physically occupied private property for the purpose of obtaining information.”). As such, it was entitled to special “Fourth Amendment significance” as “one of those protected areas enumerated” in the constitutional text. Id. at 953. At bottom, the Court must “assur[e] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.” Id. at 950 (alteration in original) (quoting Kyllo v. United States, 533 U.S. 27, 34, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)). “The Framers would have understood the term ‘effects’ to be limited to personal, rather than real, property.” Oliver, v. United States, 466 U.S. 170, 177 n.7, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). The term was not limited, however, to personal property of a noncommercial nature. It included “the goods of a merchant [or] tradesman.” Altman v. City of High Point, 330 F.3d 194, 201 (4th Cir. 2003) (quoting Dictionarium Britannicum (Nathan Baily ed., 1730)).
To recount now familiar history, “one of the primary evils intended to be eliminated by the Fourth Amendment was the massive intrusion on privacy undertaken in the collection of taxes pursuant to general warrants and writs of assistance.” G. M. Leasing Corp. v. United States, 429 U.S. 338, 355, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). “The hated writs of assistance had given customs officials blanket authority to search where they pleased for goods imported in violation of British tax laws.” Payton v. New York, 445 U.S. 573, 583 n.21, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The “particular offensiveness” engendered by these general warrant “was acutely felt by the merchants and businessmen whose premises and products were inspected for compliance with the several' parliamentary revenue measures.” Marshall v. Barlow’s, Inc., 436 U.S. 307, 311, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (emphasis added).
Consistent with this purpose, “[o]ur pri- or cases have established that the Fourth Amendment’s prohibition against unreasonable searches applies to administrative inspections of private commercial property.” Spinelli v. City of New York, 579 F.3d 160, 167 (2d Cir. 2009). The Fourth Amendment is therefore implicated by searches conducted by regulatory authorities involving the unlicensed “physical entry” on a business’s private property. See G. M. Leasing Corp., 429 U.S. at 354, 97 S.Ct. 619 (indicating that Fourth Amendment would be implicated by “warrantless seizure of property, even that owned by a corporation, situated on private premises to which access is not otherwise available for the seizing officer”).
The conclusion that TLC’s rule worked an unlicensed physical intrusion on a constitutionally protected effect is not altered by the taxicab’s “openness to public use.” El-Nahal, 993 F.Supp.2d at 467. “What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.” *260 Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An implied license therefore permits regulatory officials to do what “any private citizen might do,” without implicating the Fourth Amendment. See Florida v. Jardines, — U.S. -, 133 S.Ct. 1409, 1416, 185 L.Ed.2d 495 (2013) (quoting Kentucky v. King, 563 U.S. 452, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011)). A government agent, in the same manner as a private person, may hail a taxi when it is on duty and physically occupy it for the duration of a trip. See Maryland v. Macon, 472 U.S. 463, 470, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). But, without the driver’s leave, a typical passenger may not dust the car’s interior for fingerprints, mount a camera on the dashboard, or rifle through the vehicle’s glove compartment to peruse the tips that other passengers have paid. “[TJhere is no basis for the notion that because a retail store invites the public to enter, it consents to wholesale searches and seizures that do not conform to Fourth Amendment guarantees.” Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 329, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). The Supreme Court explored a related issue in Jardines, where law enforcement officers invited a narcotics-detecting canine to sniff around a suspect’s front porch. The Court held that a Fourth Amendment search occurred because the detectives had gathered information by “physically entering and occupying” the constitutionally protected curtilage of the house, in order “to engage in conduct not explicitly or implicitly permitted by the home; owner.” Jardines, 133 S.Ct. at 1414. The dog’s investigation amounted to an “unlicensed physical intrusion,” despite the fact that custom extended an implicit license “to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave.” Id. at 1415. “The scope of a license — express or implied — is limited not only to a particular area but also to a specific purpose.” Id. at 1416. The detectives’ conduct was therefore a search under the Fourth Amendment because they engaged in behavior that objectively exceeded the scope of their implicit license to enter while occupying a constitutionally protected area. Id. at 1416-17. Here as well, the implied license all taxis extend to the public does not encompass an invitation to install surveillance technology in their vehicles.
Accordingly, I join the majority’s analysis of Jones, Knotts, and Karo. Because I do not believe that Defendants properly put at issue El-Nahal’s interest in the- taxi at the time of the trespass, and because I disagree with the district court’s analysis of the physical trespass-based Fourth Amendment claim, I would vacate and remand for further factual development. I therefore concur in part and respectfully dissent in part.

. Indeed, this point is illustrated by Entick v. Carrington, 95 Eng. Rep. 807 (C.P. 1765), a case the Supreme Court has described as "undoubtedly familiar to every American statesman at the time the Constitution was adopted, and considered to be the true and ultimate expression of constitutional law with regard to search and seizure.” Jones, 132 S.Ct. at 949 (internal quotation marks omitted). In Entick, the plaintiff prevailed in an action for trespass after the King’s messengers, acting under the claimed authority of a general warrant, "with force and arms” entered and searched his dwelling "against his will.”